You may proceed when you're ready. Thank you and may it please the court. My name is Andrew Pierce on behalf of Ashish Dabral. It is a sincere privilege to be before you this morning and during my time I'd like to focus on two main issues that we believe were failures of the courts below. The first is that the magistrate judge and Calsep improperly sought to place the burden on defendants as it relates to prejudice, relevance, and the appropriateness of lesser sanctions in this case. And second, that the record contains insufficient evidence that relevant evidence was deleted or the loss of any such evidence was prejudicial. Now we know, your honors, that this was an issue that the lower court, the magistrate judge, struggled with. What the magistrate judge said, and there were two hearings, one of December of 20, which was a non-evidentiary hearing, it was just based on the papers and the reports of the experts, and the court called us back and said, I want to hear from those experts, asked a number of questions during the testimony of those experts, and the things the magistrate judge wrestled with, and we see this in the record at 4386, was what was the real effect of what had been deleted and what did that really mean in terms of what the plaintiff could or could not prove by what information had already been produced. The court went on to say at record 6257, what was the prejudice to Calsep and to the expert, Mr. Myers, what was he not able to do, what was he able to do that he wanted to do versus what was he not able to do, and whether there was any way to fix what had been done here. But ultimately the failure of the lower court revealed itself in the magistrate judge's report and recommendation when the court said the defendant's permanently deleted data and consequently the contents and volume of the deleted data is not knowable. As a result, it is unfair to require plaintiffs to prove that the deleted data would have been favorable to them. But that's exactly what the factors under CONA require. On the prejudice and relevance standard, what Calsep was obligated to show was that the discovery violations substantially prejudiced them as the innocent party. Calsep has argued that without this evidence, meaning what was deleted, Calsep's expert could not provide a reliable report, and without an expert report, Calsep could not prove its claims at trial. Their expert, Mr. Myers, stated it more succinctly at the record on 6266 when he said to do so, to ask him to generate a report would amount to garbage in and garbage out. Is it your position that a lesser sanction that would have been appropriate could be an instruction that because you can't determine whether or not for sure that you could assume that there are some things that should not have been deleted, that the jury could be told that, that you know, that you can instruct a jury for spoliation on that, which is lesser than death penalty and still allows you to do all your defenses, but instructs on the issue, and that would be lesser sanction? That is exactly right, Your Honor, and that's critically important in two ways. The first is because the magistrate judge acknowledged that this was a very confusing issue. It's admittedly hyper-technical. We talked about things like projects, change sets, databases. It was a highly complex, highly technical issue that the court ultimately acknowledged was a disputed issue as between the experts. So to your point, Judge Elrod, that's the first critical reason why lesser sanctions would have been appropriate, to let a jury decide on a spoliation instruction whether or not any of the conduct of defendants gave rise to an adverse inference against them. But the second reason is because that defaults us back to what this court has said, which is a desire to try cases on the merits, and as we sit here today, judges, we've never heard what CalCIP claims as its confidential trade secret information. In a source code case like this, you might expect it to be algorithms, formulas, modules, architecture, constants. There's been no requirement for CalCIP to identify what any of those trade secrets were, or if they have trade secrets, how any of them . . . We don't even . . . we don't know if there's trade secrets in this case that's not been established . . . I do not believe that's been established, Your Honor. As a matter of summary judgment or something that's not been established. It's absolutely not been established. Yes. I'm just trying to . . . so there's . . . we don't know that there are actual trade secrets? That's . . . Okay. That's correct. Is it . . . but it is true that we don't know also, and it's your client's fault, whether or not there is code that is missing at this point? You're correct, Your Honor. There are . . . Okay. There are sanctions that ultimately cannot be accounted for, although, I would point out on that issue, Your Honor, one of the critical important things here, and I think this is one of the distinctions in other cases where sanctions, death penalty sanctions have been upheld, is there is no question that there were multiple types of source codes that were available on these two servers at issue, right? So we know that BPSS, which was one of the defendants who was the actual entity where the source code was housed, had worked on all types of development. We know that in the record at 2244-45. The other work included ERPOT, well database, fluid database, rig scheduling. So part of the issue here was that it could not be said that if there was something missing, it must necessarily relate to the two source codes at issue, which were NPVT and ERCAT. And ultimately, Judge . . . Mr. Myers, CALSIP's expert, said that he would not issue a report or he would not do any work toward a report. But just because he would not did not mean that he could not. That was the point that CALSIP's . . . I'm sorry, that the defendant's expert, Ron Schnell, made. I don't understand would not do any report. If your person is not going to do a report, don't you have to get a different expert? I mean, I don't understand that. You could say, I don't have data, so I can't give a report to scientific certainty, but you would still give a report of what you did have. And I defer to my friend on that question, Your Honor, but I agree with you. Mr. Myers effectively forced the magistrate judge to make this Sophie's choice. Because he wouldn't do anything, then the judge was forced with this binary choice of do I either hold the innocent party, CALSIP, to this injury because they're claiming they can't issue a report, and in doing so, do I somehow reward the wrongdoer by allowing a . . . How big a company is your client's company? Your Honor? How big of a company?  How did that impact the judge's decision? I think it did and it didn't. It's a small company. Ashish Dibral is an individual owner of the company. He worked with his brother, Sudhanshu, who's based out of India, and then he had a team of programmers, so he wasn't intimately involved in the programming. He's not a computer expert. He's more of an engineering expert. But part of the reason I think we haven't focused on that first factor of culpability is we speak to it in our brief, but I think the stronger arguments deal with the issue of relevance. So you, to stand here today, accepting responsibility that your client is culpable? No, Your Honor. We do challenge . . . You can't have both ways. That's fair, Your Honor. I don't mean to say we don't challenge it. I do try to be perfectly frank in saying that I don't think it's our strongest challenge. Part of the reason why we don't think he's culpable is because this was . . . most of the data collection that was being done was being done out of India by his brother, Sudhanshu. And one of the points that CalCIP made relative to whether or not there was culpability as to Ashish Dibral was that there was nothing in the record that indicated that Ashish Dibral had told his brother not to destroy anything. Well, that seemed to be sort of a negative on a negative. But that's normally what you have to do when you have someone going, threatening to bring a case against you, even before the case is actually filed. You get a thing and you send around, preserve all documents. Everybody does this nowadays. So he had that responsibility. In that regard, you are correct, Your Honor, yes. And that's why, you know, even in the context of what was deleted in the lower court arguments, it was never a defendant's position that anything should have been deleted, that there was never . . . But one important point to note on the deletion issue was that because we were talking about both programs that were relevant and programs that everybody acknowledged were not relevant, even CalCIP at one point, and we see this in the record at 3841 and 3926, had said that source code projects that were not at issue could simply be deleted. So again, the mere existence of deletion was not evidence of wrongdoing in this case. Do we have a case that allows the judge to do death penalty sanctions without prior sanctions? And how do you distinguish that case? I think most of the cases have shown that where death penalty sanctions were appropriate, part of the reason for that was because there had been prior sanctions that were not upheld. We know that from the KCI-USA Inc. case, which was a Sixth Circuit case in 2020. I believe there's others. The other distinction I would point to, Your Honor, though, is where other sanction cases have been upheld is where defendants failed to participate going forward after some point in time, where the court had given multiple chances to a party to either explain what had happened or the court had given notice of the potential consequences if a failure to comply continued. Is that what happened here? There were warnings given that were ignored? There were warnings given, Judge. I think, ultimately, that the last warning was at the last hearing. There's something that you'll see in the record referred to as a pro-arch report. I remember specifically being instructed by the court to make sure that nothing relative to that report was damaged in any way or that anything happened to it. One of the issues here, I think, that speaks to your point, Judge Clement, is that there had been different efforts to produce the source code at issue. That had happened in April of 2020. That had happened in June of 2020. CALSEP was admittedly having issues accessing that source code that was being produced. Ultimately, in July of 2020, that's when we made the decision we were just going to produce the entirety of the source code from both servers to try to address everything. Ultimately, what Ron Schnell has been able to establish by looking at those two servers compared against one another, as well as the pro-arch report, is that there's little to no reason to believe that anything from the source codes at issue, NPVT or ERCAT, was destroyed. Those are essentially uncontroverted. By way of example, there's discussion in the record about projects and whether or not projects were deleted, or whether or not there could be a determination as to when those projects were deleted. That's a totally different thing. The scope of what was destroyed is not the same thing as what Judge . . . Respectfully, I don't think it's what Judge Clement was asking, I could be wrong. I thought she was asking, did the magistrate judge say, if you do this again, I'm going to sanction you up to the level of death penalty, or something of the sort? I don't believe that, and I'll defer to my friend on that as well, and I'll look so that I can come up and answer that question more specifically on rebuttal. I'm not aware of that specific admonition ever being given. Or anything of the sort, that I'm going to really . . . you're going to get it if you do this thing you already did? No, Your Honor, because I think . . . and the reason I say no is because through most of the motion practice and the issues before the court, it was a function of whether or not everything had been given. I don't believe the deletion issues were raised until the very end in July, and I'm not aware of any subsequent productions after that, the hearing on the motion for sanctions. The only thing that was done was this comparison of the pro-arch report, which was the defendant's attempt to exonerate themselves to show that they had not engaged in deletion of anything that would be relevant to this lawsuit. Why didn't the award of fees and $4 million of damages, why didn't that get appealed? I think, Your Honor, because if . . . there are three analyses, I believe, that are at issue here. The reason is because if the court felt that the fees were incurred because of the defendant's improper production over the course of several months, and that caused CALSEP to incur fees to bring motions to the court, that seemed to be a sanction that was well within the court's powers to enforce. Even in, for example, Remkus, where the court overturned the death penalty sanctions in that case, it still upheld the attorney's fees because it was the result of defendant's conduct. Ultimately, on the issue of the merits, which is the critically important issue, the record shows at 6361 that CALSEP presently has access to millions of lines of source code, millions, and that CALSEP could review the source code and its development substantively against its own and explore source code control system metadata, showing who did what and when and why, and in the comments . . . So is your big issue that your client wants the code still, and so you don't want to have this decision against . . . What is the basis? Why is this the strategy? The reason this matters, aside from the legal issues, is because my clients declare . . . I'm speaking a bit out of the record, and I know I'm out of time if I may answer, but the truthful answer is my clients in bankruptcy proceedings, that if there is a death penalty sanction that's found against Mr. DeBraw, that affects the dischargeability of his bankruptcy, and so that's why, you know, in this instance, it stands to cause significant, considerable harm to him. Thank you, Counsel. Good morning. May it please the Court, my name is Alex Gomez for CALSEP AS and CALSEP, Inc. I'd first like to start off addressing a couple of quick points that my friend raised. One is this question whether CALSEP's software is proprietary. Undoubtedly it is. The PVT SIM software is no different than Microsoft Word software. They sell it to customers who pay for it under a restricted license. That's in the evidence, and it's in the record. The second quick point I want to make is . . . But whether or not it's a trade secret or not, that has to be legally determined, and sometimes code is not. That's a hotly disputed issue in all kinds of intellectual property litigation about whether certain code is a trade secret or is it generally available, because there's so much free code in the world now, and so I'm concerned about the sanction that didn't make you have to . . . that takes away your responsibility to prove that you have a trade secret here at all. So, one, there's declarations in the record that identify that CALSEP's software is a trade secret. Right. Your client did declarations, but as I . . . that didn't get summary judgment. It only is being declared because of the sanctions. Yes, Your Honor. And two, the default judgment sanctions, in striking their pleadings and awarding sanctions, because their pleadings have been struck, they have no defenses to our complaint, our last amendment complaint that says . . . You still have to prove it's a trade secret. You have to prove it, and I'm concerned that if the court didn't consider the lesser sanction of the spoliation to say, to direct the jury to understand that they've eliminated their code and that they did have access to it and blah, blah, blah, and we can never know whether they really took all of it, but then you have to still prove that you have a code that is a trade secret, and that gets swallowed up in this really broad sanction. So, I do believe the declarations and the testimony of Ron Schna . . . I mean, of Meyers, plaintiff's expert Meyers, at the March 25th hearing, established that it's a trade secret. But it wouldn't ordinarily have been established but for the court giving death penalty sanctions. Why isn't Remkes . . . let me ask it this way. Why wouldn't Remkes require us to vacate this and order the district court to consider other sanctions, which could be very detrimental sanctions. It doesn't have to be toothless. It could be a spoliation instruction that wipes out their entire case, except for your burden to prove the Prima Facie case. So, let's look at what the report and recommendation says with respect to lesser sanctions. And I quote from the report and recommendation, page 22 and 23, default judgment against a noncompliant party is appropriate when no lesser sanction could achieve their appropriate level of deterrence. Here the court has given the defendants multiple opportunities to comply, and particularly instructed counsel that the last order was a last chance. Nonetheless, even after that warning, defendants deleted multiple change sets in defiance of this court's order. This is an egregious case. Defendants have willfully and intentionally attempted to manipulate the judicial system, and the court's numerous hearings on discovery have been met with . . . Yes, sir. But the last order is not an order of sanction. That's the problem. There is no lesser sanction. This court, in Enright Taxotere, the Fifth Circuit, held that lesser sanctions includes warnings, and providing a party with a second or third chance is itself a lenient sanction. Right, but it didn't . . . Which one met with . . . There's no warning that is of this level. There is no warning that was escalating warnings that you're going to get death penalty if you do this again, or you're going to get . . . There's no lesser sanction ever given, or no warning that this is on the verge of death penalty. I just don't . . . Rimkus, what do you do with the Rimkus case? At the August 26, 2020 hearing, Your Honor, what we call the last chance hearing . . . So at that hearing . . . Excuse me a second, I need to find my . . . At that last hearing, transcript pages 6048 through 6053 on the record on appeal, Magistrate Judge Palermo orders Mr. DeBrawl to produce discovery, and I literally say to Magistrate Palermo, as I'm sitting here today, I am certain Mr. DeBrawl is going to destroy evidence or manipulate the data in his next production. To his credit, my friend Mr. Pierce stands up and tells the court, I'm going to order a copy of this transcript of this hearing, I'm going to print it out, and I'm going to give it to Mr. DeBrawl so he can read it, to make sure he complies with your order, and I think that DeBrawl is in charge of the discovery. What happens after that? Days after that warning, that last chance warning, days after that last chance warning, Mr. DeBrawl destroys 13 chainsets of unknowable amounts of data in defiance of the court's order. Which may or may not have . . . Days before . . . He shouldn't have done it. And nobody's disputing that things were destroyed that should not have been destroyed, and that they were done . . . He admitted that. We're all agreeing that they were wrong. They should not have destroyed. It may have been intentional and premeditated, but we don't have to decide that today. And it may have involved your client's code, and we can't decide that today. And so, that's all wonderful, but . . . I mean, not wonderful at all, terrible, and a terrible disservice to our discovery process. But RIMCAS, you still haven't addressed the RIMCAS case. The fact that you say, I'm concerned that they're going to destroy, and the lawyer says, I'm going to give this to them, and I'm going to try to make them not destroy, that is not prior sanctions that . . . In re taxatire says, warnings are prior sanctions. Can you please deal . . . But there's not a warning baked in there. She gave a warning to Mr. DeBrawl at that August 26, 2020 hearing. But what do you say about RIMCAS? You still have not addressed RIMCAS. I've asked you about seven times, RIMCAS, RIMCAS, RIMCAS. Please address the RIMCAS case. About why an adverse inference shouldn't have been given? Because the court decided that it would be pointless to give Mr. DeBrawl another sanction because she was certain he wouldn't abide by it because he had proven that he had defied all the prior orders. And the Fifth Circuit has said, you don't need to issue orders that are pointless. And so . . . But you could have given an order that would have completely negated their ability to argue about the code, but it wouldn't have been a death penalty sanction. Well, two points about that. One, our expert has testified, and to this day, they have destroyed so much evidence that he is incapable of rendering her an expert opinion based on everything they've destroyed. I guess we're still not communicating, because assume, Arguendo, that you get an instruction that they destroyed that stuff and that that's established and that it's related to your client's business. You get an instruction of that. Then why isn't that a lesser sanction that accomplishes everything that your expert needs and that you need? Because my expert cannot testify because he has said from the beginning of the case . . . He doesn't have to testify of what they destroyed. He only needs to testify of what you created and what you have as your business. The way he testifies and the way in Quantlab, Quantlab discusses this, Judge Ellison, the way you prove a trade secret case is not by doing a code comparison, which is what they want us to do, because at the end of the day, codes written in different languages will not show any similarity. Right. They lose. But what if . . . That is a lesser sanction. I don't think that you understand what . . . I'm just saying all you would have to prove is that you do, in fact, have a trade secret, not that they stole it. Why is . . . That would all be assumed and baked in. Why isn't that a tangible lesser sanction that could have been entered in this case? That my expert has to . . . My expert has admitted he's incapable of proving that he can render a credible expert opinion, I suppose . . . Not to compare the two. We're just taking what you have in your file, and he's going to have to say that this is a trade secret, and it's worth protecting. I think he did say that at the . . . Yes. If he did it in a declaration, he could certainly do it at trial or on summary judgment. I think he did it also at the live evidentiary hearing on March 25th. Yes. Then that could be the basis for summary judgment or jury verdict, and it would be a lesser sanction than death penalty that fully compensates your client, because you already got the attorney's approval for the terrible act that his client committed, and that's lesser. It is lesser, but at the end of the day, the Fifth Circuit has previously said that if they've denied my opportunity to prove my case by the destruction of evidence, then death penalty sanctions is appropriate. And so a lesser sanction of an adverse inference wouldn't get me there. They still . . . I don't understand that. I just have said it four times of a way that the adverse inference gets you, and all you have to do is establish that you have a trade secret on your end of the house. But I think we just are not communicating, so if you have any other argument, please go ahead. Your Honor, in the report recommendation, Magistrate Palumbo found in the district court also the plaintiffs have established that the death has been intentionally deleted that is likely relevant. And so there is a finding of relevance meeting the counterfactors. It was designed, the destruction she finds on page nine, the defendant's actions violated multiple court orders were willful and designed for the purpose of thwarting discovery to prevent plaintiffs from being able to prove their claims, which they successfully did by not allowing plaintiff's expert to render a credible expert opinion in this case. In the district court's factual findings are reviewed for clear error. In Moore v. Sicko, this court held clear error review of factual findings is especially deferential when reviewing a district court's assessment of trial testimony because of prior fact seen in judge's witnesses, as in this case. Moore also held that the district court's account of the evidence is plausible. In light of the record viewed in its entirety, the Court of Appeals may not reverse, even though convinced, if sitting as a trier of fact, it would have weighed the evidence differently. The findings with respect to bad faith, the lower court clearly found Mr. DeBral in bad faith. There is on page eight of the report recommendation, there is a heading that says, culpability, defendant's actions show bad faith. We talked about the lesser sanctions, and then, Your Honor, with respect to the motion for reconsideration, it's plain error. The lower court got it right in rejecting each element. Mr. DeBral has a burden of proof to succeed on the reconsideration. He must have shown that he acted with due diligence in discovering the new evidence. DeBral fails to meet his burden of proof because he did not file any evidence with respect to his due diligence. DeBral's brother's declaration is insufficient. DeBral's own expert testified that all the disruptions during the litigation were intentional as opposed to accidental. DeBral does not dispute these disruptions. They destroyed, during the litigation, a BPSS collection, which he referenced. We sent an email specifically requesting that on June 22nd. Three days later, on June 25th, we sent a follow-up email. Eight minutes after we sent that follow-up email, that BPSS database collection gets destroyed. 185,000 work items were destroyed four days before production. Five key project folders were deleted during the litigation. The 13 change sets, after the court's last chance order, which the court gave a verbal order at the hearing, August 26th hearing, and then issued actually a written instruction, a written order, Mr. DeBral, in defiance of the court's orders, destroyed more evidence. If the court were to issue an adverse inference, essentially, where we would be at is, my expert has testified that he cannot prove this case because of all the amount of destruction that's taken place. We would be having a trial where there's an adverse inference saying, all this destruction of evidence, you have to believe it. My expert can't testify as to what was done because he's already said, I can't render a credible . . . I cannot render a credible opinion in this case because of the amount of damage that has taken place, so I'm going to have to go hire a new expert. I don't think you would have to hire a new expert, would you? If the adverse inference was that they took your stuff and they destroyed it, then why would you need an expert to prove it? Is an adverse inference dispositive? Because at the end of the day, an adverse inference only gets me a question to the jury. They took your . . . It could be that the jury is instructed that they took the stuff and it is this stuff at issue. The jury could consider that, but it doesn't require the jury to rule in my favor. The jury can then rule differently, which would allow them to succeed in thwarting our ability to prove our case because an adverse inference just goes to the jury and says, you should consider that this was detrimental to Mr. DeBrawl as part of your findings, but it doesn't require them to rule in my favor. And so that would allow Mr. DeBrawl to have successfully thwarted my opportunity to prove my case. I think that . . . Well, we're not going to . . . I'm not the trial court, but this could be structured in a way that you accomplished your goal, but you still have to prove that you had a trade secret. I will point to the record in a supplemental letter where our expert established that we have a trade secret, if that's okay with the court. You're welcome to file any appropriate 28Js, as the other side is as well. We're not requesting anything. Is default sanctions an appropriate sanction? Absolutely. DeBrawl filed an affidavit at the beginning of the lawsuit where the court ended up saying that affidavit was lied by the evidence. Record on appeal 2983. DeBrawl knew he had been caught by the court and lied early in the litigation. When he's told that at that August 26th last chance hearing, do not destroy anything else. This is your last and final chance. What does he do? He destroys 13 more change sets of unknowable amounts of data merely days after being warned. Where is that record citation? That's the record transcript that I gave you earlier, Your Honors. I said it earlier. That's the one where I talked about that, that I said I'm starting here as I'm sitting here today. 640, 6048 to 6053. Yes, Your Honor. And you'll see that Magistrate Palermo, if you read the transcript, she's very clear that this is it, you are done. And he chose to ignore her. And the integrity of the court, of the lower court in its order is at stake. A lesser sanction would be a green light to future litigants that following court orders is optional and that destroying evidence has limited consequences. Simply put, in a case ever warned of death penalty sanctions, this is it for Mr. DeBrawl having repeatedly destroyed evidence during the litigation, relevant evidence during the litigation, and after multiple court orders including the last chance order. Thank you, Your Honor. We have your argument. You've saved time for rebuttal. Do you have anything? Yes, Your Honor, thank you. I just wanted to speak to a few of the points that were raised during my friend's time before the court. The first is the applicability of REMCIS. We would argue that REMCIS is directly on point, especially where, as in this case, the record contains conflicting evidence which even the magistrate judge recognized as to the reason certain information was deleted, what was deleted, and what that deleted information would have shown, and what other evidence was still available for, in this instance, CALCIP's use. What the court said in REMCIS was, moreover, although the evidence in question would have, oh, I'm sorry, this is the QuantLab case, but also one that's on point that my friend referenced. At the end of that case, Judge Ellison in that case concluded, moreover, although the evidence in question would have undoubtedly have been relevant to the investigation, which is a fact that we don't even know in this case, that is, QuantLab would have benefited from checking the workstations to see what they contained. It is still somewhat speculative that their contents would have ended up as a part of QuantLab's case. As such, the court is able to conclude only that they were moderately relevant and their loss moderately prejudicial. And in that instance, the court determined that death penalty sanctions would have been inappropriate. Similarly, from REMCIS, the holding there was that courts recognized that a showing that the lost information is relevant and prejudicial is an important check on spoliation allegations and sanction motions. And that courts have held that speculative or generalized assertions about the missing evidence and what it would have been, and whether that missing evidence would have been favorable to the party seeking sanctions are insufficient. Ultimately, what Ron Schnell said in this case was that what he thought could be done is that the respective experts could have looked at the competing codes. And if they hit a dead end on something in the development that they couldn't determine what the reason for that dead end was, then you could look at the appropriateness of sanctions in that instance. But ultimately, when looking across the issues that we were talking about, the projects, change sets, and the database, Ron Schnell conclusively established in his expert opinion that none of the deletions could have been relevant to the source code by way of example because he could build and run the NPVT and ERCAT programs that had been developed by the defendants, meaning that it was unlikely that there was missing code. He could also line up the development timeline to show that there weren't any gaps. Ultimately, for those reasons, we ask that this court reverse and remand with instructions similar to Remkus, stating that CALSEP's not entitled to an order striking the defendant's pleadings and entering a default judgment. And that instead, at most, that either CALSEP be entitled to the award of attorney's fees it's already received. And if there is any instruction to be given, that it be something upon the conclusion of evidence that based on the defendant's spoliation, if any, CALSEP's entitled to an adverse instruction at trial. Ultimately, what that allows is for this case to be adjudicated on the merits, which is what this court says we should always strive to do. Thank you. We have your argument. We appreciate the argument on both sides. This case is submitted. The court will stand in recess until tomorrow at 9 AM. Thank you.